**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

**Dated: 08:42 AM April 25, 2017**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) CHAPTER 11 |
| | ) |
| JOSEPH J. DETWEILER, | ) CASE NO. 09-63377 |
| | ) |
| Debtor. | ) ADV. NO. 09-6118 |
| _____ | ) |
| | ) JUDGE RUSS KENDIG |
| SEQUATCHIE MOUNTAIN | ) |
| CREDITORS, | ) |
| | ) |
| Plaintiffs, | ) **MEMORANDUM OF OPINION (NOT** |
| v. | ) **INTENDED FOR PUBLICATION)** |
| | ) |
| JENNIFER L. LILE, | ) |
| | ) |
| Defendant. | ) |

Now before the court is the purchasers of undeveloped land at Sequatchie Pointe's ("Plaintiffs[1]") Motion to Alter or Amend the Court's Judgment Order, issued on February 16, 2017. Plaintiffs are seeking to alter or amend the court's judgment based on both factual and legal errors. As mentioned in the court's previous rulings, regardless of whether specifically mentioned in this Memorandum of Decision, the court has examined the submitted materials, weighed the credibility of witnesses, considered all of the evidence, and reviewed the entire

---

[1] Plaintiffs in this instance refers to all purchasers of undeveloped land who joined this litigation except George Stone, Susan Stone, Marvin Ferkinhoff, Carol Ferkinhoff, Charles McAvoy, and Ellen McAvoy who were successful in proving their claims at trial. These Plaintiffs are not moving to amend or later the judgement granted in their favor.

1

record of the case. Based upon the court's review of the evidence, and for the following reasons, the court will not alter its previous judgment. Accordingly, Plaintiffs' Motion to Alter or Amend Judgment is DENIED.

The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference dated April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTUAL BACKGROUND

This adversary proceeding arises in the chapter 11 bankruptcy proceeding of Joseph Detweiler ("Debtor"). Debtor filed his chapter 11 bankruptcy petition on August 17, 2009. On October 19, 2009, Plaintiffs filed an adversary complaint. Plaintiffs alleged in their complaint that Debtor's misrepresentations and fraudulent conduct caused $13,500,000.00 in nondischargeable damages under 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6). On January 25, 2016, the court granted summary judgment in Debtor's favor on Plaintiffs' claims under § 523(a)(4) and (a)(6). Additionally, Debtor was granted summary judgment on Wesley Jinks, Mary Czajka, Ana Rodriguez, William King, Manuel Real, Gene Renz, Joyce Renz, and the Estate of John Hallman's claims under § 523(a)(2)(A).

On March 7, 2016, a four-day trial commenced regarding the Plaintiffs' remaining § 523(a)(2)(A) claims. On September 15, 2016, Debtor's attorneys filed a notice of suggestion of death for Debtor, Joseph Detweiler. On September 28, 2016, Plaintiffs filed a motion to substitute Jennifer L. Lile ("Defendant"), executor and representative of the estate of Joseph J. Detweiler, as the defendant in this matter. On February 16, 2017, the court granted Plaintiffs motion to substitute.

On February 16, 2017, The court granted judgment in favor of George Stone, Susan Stone, Marvin Ferkinhoff, Carol Ferkinhoff, Charles McAvoy, and Ellen McAvoy on their claims under § 523(a)(2)(A). The court granted judgment in favor of Defendant on all the other Plaintiffs' claims under § 523(a)(2)(A).

The following facts are those relevant for the current motion. Debtor was the sole owner and director of J.J. Detweiler Enterprises, Inc. ("JJDEI") and Sequatchie Mountain, LLC ("Sequatchie"). During the pendency of this litigation but after the completion of the trial Debtor passed away. Jennifer Lile, executor and representative of the estate of Joseph Detweiler, was substituted as the Defendant in this matter.

ArborOne Enterprises, Inc. ("ArborOne") financed Sequatchie Pointe. ArborOne provided two loans and a revolving line of credit. The financing involved three agreements between ArborOne and Sequatchie, JJDEI, Wilder Mountain, LLC, and Debtor. The agreements were the following: Term Loan No. 1, Term Loan No. 2, and a revolving line of credit. The first loan was for $5,718,911.00 involving the refinancing of outstanding loans owed to ArborOne.

2

The second loan was for the $7,566,721.00 to purchase the land for Sequatchie Pointe. The revolving line of credit was for $5 million.

ArborOne also provide a letter of credit in October of 2008 for $1.4 million. In addition to loans from ArborOne, Tennessee required that bonds be secured for the construction of the roads, for the Marion county portion of the project.

In December of 2006, ArborOne sent a default notice regarding a breach of the loan agreement requiring the borrowers to maintain a thirty-five percent owner equity percentage. The matter was not cured in a timely manner resulting in ArborOne sending a second default notice regarding the owner equity percentage in May 2007. The second letter granted a waiver of the default if the default interest amount of $89,746.03 was paid. Sequatchie paid the default interest amount. ArborOne sent another default letter dated July 27, 2007, regarding the owner equity percentage covenant. ArborOne again offered a waiver, this time on the condition that a fee of 50 basis points was provided. Finally, nearly eighteen-months later, in an ArborOne letter dated January 15, 2009, the loans were declared in default because an installment payment had been missed. As a result, ArborOne changed the special release provision and required that the entire amount of the purchase price that Sequatchie received for all future lot sales be paid to ArborOne. Debtor appealed ArborOne's decision to require one hundred percent of lot sales and attempted to refinance the loans with ArborOne. On April 2, 2009, ArborOne's Credit Review Committee sent a letter denying Debtor's appeal and restructuring of the loans.

Debtor is adamant that he intended to finish Sequatchie Pointe. Debtor stated that he mortgaged other properties and sold "paper" (other receivables he owned) to invest two million dollars of his own money into Sequatchie Pointe. It was not until ArborOne changed the special release provisions in January 2009 that Debtor knew Sequatchie Pointe project was never going to be finished.

Robert Spivey's deposition testimony was introduced into evidence at trial. Mr. Spivey is a Senior Vice-President and manager of capital markets in the bond department at ArborOne. Mr. Spivey has worked for ArborOne and its predecessor Pee Dee Farm Credit since 1987. Mr. Spivey was working for ArborOne as a credit analyst when the loans were first issued for Sequatchie Pointe. Mr. Spivey stated that he was responsible for servicing the Sequatchie Pointe loans. ArborOne had a lending relationship with Debtor preceding the loans for Sequatchie Pointe. Mr. Spivey testified that ArborOne did not require one hundred percent of the sale proceeds until January of 2009. According to Mr. Spivey, the loans should have been issued because Debtor and his companies had strong credit and were consider a low risk to default.

Russell Phillips, the managing partner of the Phillips Organization, testified at trial regarding the financial condition of the Debtor and his companies. The Phillips Organization is an accounting and consulting firm. Mr. Phillips is a certified public accountant and valuation analyst with 32 years of experience. Mr. Phillips specializes in bankruptcy and insolvency and has worked on numerous bankruptcy matters.

Mr. Phillips testified as a summary witness regarding the financial documents of JJDEI and Sequatchie. Debtor hired Mr. Phillips in December of 2008 to review the Sequatchie Pointe

project as the project was having difficulties getting additional funding. Mr. Phillips reviewed the financial statements, tax returns, project plans, and updated cost estimates. In April of 2009, Mr. Phillips assisted the Debtor in his attempt to restructure the loans with ArborOne.

According to Mr. Phillips, Sequatchie Pointe became unfeasible in January of 2009 when ArborOne required one hundred percent of the lot sales. Mr. Phillips confirms Debtor's testimony that it was not until ArborOne began requiring all of the sale proceeds that there was not enough money to complete the infrastructure as promised.

As the sole owner of Sequatchie and JJDEI, Debtor oversaw the Sequatchie Pointe project from Ohio. Debtor visited Sequatchie Pointe sparingly during the years of the development. According to Debtor, he approved the advertising by Fred Fetzner and helped determine the price of the lots. In addition, Debtor had final authority regarding the approval of the sales at Sequatchie Pointe. Otherwise he was not directly involved with the day to day operation of Sequatchie Pointe or the training of the sales force.

The depositions of salespeople, Ervin Moore, Ian Hearn, Matt Sliger, Brandon Oliger, and Lucas Alonzo, were introduced into evidence. All of the salespeople stated that they never intentionally misled any customers nor was there a scheme to mislead buyers. Matt Sliger and Lucas Alonzo stated that the sales force was instructed to review the HUD report with every purchaser. In addition, Ervin Moore, Ian Hearn, and Brandon Oliger testified that they reported to Dan Graber, who was involved with sales, and it was Mr. Graber who provided them with estimates for completion of the amenities and infrastructure that they provided to Plaintiffs.

Ervin Moore recounted that during a meeting Mr. Graber told the sales force to tell potential buyers whatever they wanted to hear in order to close a sale. He stated that Mr. Graber told them to mislead customers regarding the amenities. According to Mr. Moore, it was Mr. Graber and not Debtor that told other salespeople to mislead customers. Mr. Moore was later terminated.

## LAW AND ANALYSIS

### I.    Standard of Review

Plaintiffs filed their motion to alter or amend the courts final judgment order under Fed. R. Bankr. P. 9023 and 8002. Rule 9023 provides that Fed. R. Civ. P. 59 is applicable in bankruptcy proceedings. Under Rule 59(e) there are four grounds to alter or amend a judgment: (1) if there was a clear error of law; (2) newly discovered evidence; (3) intervening change in controlling law; or (4) to prevent manifest injustice. In re Daher, No. 10-17252, 2015 WL 4555394, *1 (Bankr. N.D. Ohio July 28, 2015) (citing GenCorp, Inc. v. Am. Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999)). Plaintiff as the moving party has the burden of established grounds for relief. Hamerly v. Fifth Third Mortg. Co. (In re J & M Salupo Dev. Co.), 388 B.R. 795, 805 (6th Cir. B.A.P. 2008). The decision to grant relief under Rule 59(e) is within the sound discretion of the court. Id.

Plaintiffs challenge the court's judgment for two reasons: (1) that the court ignored critical facts and (2) the court relied upon contradictory legal authority regarding the issue of imputed fraud. Plaintiffs never articulate the grounds upon which they are seeking the alteration of the court's judgment order. Based on Plaintiffs' arguments it would appear they are arguing that either a manifest injustice or a clear error of law requires the court to amend its judgment order.

## II.     The Court did not Make a Factual Error Resulting in a Manifest Injustice

Plaintiffs argue that the court ignored critical facts in reaching its decision. Plaintiffs have not provided any newly discovered evidence. Instead, they argue that the court did not properly consider certain facts. Although, Plaintiffs do not specifically cite manifest injustice in their motion, an argument based on a court's error in its consideration of the facts is properly raised under manifest injustice.

Manifest injustice is an amorphous concept difficult to clearly define. The Sixth Circuit Bankruptcy Appellate Panel has endorsed some guidelines to be used on a case-by-case basis in determining whether the party seeking reconsideration has shown the necessary manifest injustice. Cusano v. Klein (In re Cusano), 431 B.R. 726, 734 (6th Cir. B.A.P. 2010).

> A movant seeking Rule 59(e) relief must be able to show an error in the trial court that is direct, obvious, and observable. The movant must also be able to demonstrate that the underlying judgment caused them some type of serious injustice which could be avoided if the judgment were reconsidered. Essentially, the movant must be able to show that altering or amending the underlying judgment will result in a change in the outcome in their favor. A party may not seek Rule 59(e) relief on the premise of "manifest injustice" if the only error the movant seeks to correct is a poor strategic decision.

Id. (quoting In re Henning, 420 B.R. 773, 785 (Bankr.W.D.Tenn.2009)(internal citations and quotations omitted)).

A motion to amend a judgment based on factual errors requires that the court conduct a two-step analysis. Melton v. Melton (In re Melton), 238 B.R. 686, 693 (Bankr. N.D. Ohio 1999). First, the court must ascertain whether any factual errors occurred. Id. If there are no factual errors, the motion must be denied. Id. On the other hand, if the at least one factual error did occur; the second step of the analysis is warranted requiring "the Court to ascertain whether the factual error actually affected the validity of the judgment." Id. The reason for the two-step analysis is that Fed. R. Civ. P. 59 is not a method for a party to raise arguments or present evidence that should have been raised at trial. Id. (citing McConocha v. Blue Cross and Blue Shield Mutual of Ohio, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996)).

Plaintiffs argue that the court failed to discuss and consider relevant evidence that resulted in a factually erroneous judgment. Specifically, Plaintiffs claim that Debtor stated he knew the project would fail in 2007; that Debtor was in complete control of the project; Debtor

09-06118-rk    Doc 351    FILED 04/25/17    ENTERED 04/25/17 10:29:57    Page 5 of 9

knew of false statements regarding deadlines; and Ervin Moore's termination corroborates their theory of liability.

Plaintiffs' assertion of a factual error is incorrect. As discussed previously, the court considered all the relevant evidence entered at trial, weighed the credibility of the witnesses, and reviewed all of the documents entered into evidence. The court found that the evidence did not support Plaintiffs' assertion that Debtor stated he knew the project would fail in 2007. Instead, as discussed in the court's opinion, Debtor did not know the project was doomed until January 2009 when he received a letter from ArborOne requiring 100 percent of the lot sale proceeds. Debtor's own statement is corroborated by the testimony of Mr. Spivey and Mr. Phillips. There were no lot sales at Sequatchie Pointe after the January 2009 letter.

Debtor was not involved in the daily running of the project or the sales of lots. Multiple salespeople testified that Debtor was rarely at Sequatchie Mountain. Plaintiffs' testimony supports the fact that Debtor was rarely present at Sequatchie Pointe as he only had direct contact with twelve Plaintiffs. Debtor oversaw the project from Ohio and had final authority regarding the approval of the sales but was not actively exercising complete control of the project or very involved in the day-to-day operations and sales at Sequatchie Pointe.

Importantly, as discussed at length in the court's opinion, there were no fraudulent misrepresentations regarding the deadlines for completion of the project. The only actionable misrepresentations were regarding the bonding for lots sold in Georgia. Instead, the statements regarding the deadlines are better understood as unfulfilled future promises that could serve as the basis for a breach of contract claim but not intentional misrepresentations. The fact that these deadlines were not met "is not by itself proof that the contract was made with the intent to defraud." Waitman v. Steed (In re Steed), 157 B.R. 355, 358 (Bankr. N.D. Ohio 1993). Additionally, Plaintiffs did not present any credible evidence that Debtor knew that the representations regarding timeline for completion were false when made.

Plaintiffs claim that the termination of Ervin Moore corroborates their theory that the Debtor was in charge of a plan to provide purchasers with fraudulent dates regarding the completion of the project. The court considered Mr. Moore's testimony, as it did all the other relevant evidence. Mr. Moore never claimed that the Debtor knew of any fraudulent sales practices. In fact, Mr. Moore believed that Debtor always intended to finish the project. Additionally, Mr. Moore's allegations regarding Mr. Graber directing the sales staff to mislead potential purchasers was not corroborated by any of the other salespeople. Absent more, the fact that Mr. Moore was terminated does not prove that the salesforce was providing intentionally misleading deadlines to potential purchasers.

Plaintiffs have not shown that there was any factual error in the court's judgment. Instead, Plaintiffs are attempting to reargue the case they presented at trial, which the evidence did not support. "A motion under Rule 59(e) is not an opportunity to re-argue a case." Sault Ste. Marie Tribe of Chippewa Indians v. Engler, 146 F.3d 367, 374 (6th Cir. 1998). Plaintiffs raised all of these arguments during trial. The court considered Plaintiffs' arguments and ruled against them based on the evidence presented. Plaintiffs may not argue their case again. Accordingly,

because there was no factual error resulting in a manifest injustice the court will not amend its judgment.

### III. No Clear Error of Law is Present in the Court's Analysis Regarding the Issue of Imputed Fraud

Plaintiffs claim that the court relied upon contradictory authority regarding the issue on imputed fraud and thus reached contradictory conclusions in its rulings on Defendant's motion for summary judgment and its granting judgment in favor of the Defendant on Plaintiffs' claims under 11 U.S.C. § 523(a)(2)(A).

#### a. The Court did not Rely on Contradictory Authority

A Rule 59(e) motion that is based on a clear error of law "requires the moving party show that matters or controlling decisions were overlooked that might have materially affected the earlier ruling." International Union United v. Bunting Bearings Corp. (In re Buntings Bearings Corp.), 321 B.R 420, 422 (citing Wechsler v. Hunt Health Sys. Ltd., 186 F. Supp. 2d 402, 410 (S.D.N.Y. 2002)).

In the court's summary judgment memorandum of opinion, the court discussed the choice of law issue regarding whether Tennessee or Ohio law should apply to any agency issues. The court determined that Tennessee agency law would be controlling. The court also noted that there was no controversy regarding whether the Sequatchie Mountain sales force were the Debtor's agents. The court did not rule on the issue of imputed fraud because there was a significant factual dispute rendering summary judgment inappropriate. Therefore, the court did not choose what law applied to the issue of imputed fraud because the issue was not discussed in the summary judgment opinion.

At trial, Defendant raised the issue of whether in a bankruptcy matter the fraud of an employee or agent could be imputed to a debtor. Plaintiffs argued that Tennessee agency law should control this issue. The court determined that this was an unresolved issue for the bankruptcy courts of the Sixth Circuit. Sequatchie Mtn. Creditors v. Lile (In re Detweiler), No. 09-63377, Adv. No. 09-6118, 2017 WL 650062 *18 (Bankr. N.D. Ohio Feb. 16, 2017). Comparing the decisions from other circuits regarding the issue of imputed fraud in bankruptcy matters, the court adopted the standard expressed by the Ninth Circuit in Sachan v. Huh (In re Huh), 506 B.R. 257, 272 (9th Cir. 2014). The Ninth Circuit reasoned, and this court agreed, that because courts are to interpret the Bankruptcy Code narrowly in favor of the debtor and against creditors the "knew or should have known" standard is appropriate. Id. Plaintiffs proved that Defendant was liable under this standard by showing Debtor was present when a Sequatchie Pointe salesperson misrepresented to Charles and Ellen McAvoy that the bonds covered the road construction in Georgia.

Here, Plaintiffs have not shown that the court relied on contradictory authority that would materially affect the court's ruling. The only issue the court discussed during summary judgment was the choice-of-law issue. The court held that Tennessee agency law is controlling. The issue of imputing the fraud of an employee to a debtor in a bankruptcy matter goes beyond

the issue of agency. Because the Bankruptcy Code is premised on providing a debtor a second chance, an additional level of culpability is required beyond merely establishing an agency relationship. In re Detweiler, 2017 WL 650062 at *19 (citing In re Huh, 506 B.R. at 262-63). Relying on In re Huh is not using contradictory legal authority to rule on the same issue. Instead, it is the court using relevant bankruptcy case law to rule on an undecided issue specific to bankruptcy proceedings like the present matter. Accordingly, there is no clear error of law.

### b. The Outcome of the Trial Would be the Same Under Tennessee Agency Law.

Applying Tennessee agency law to this matter would not change the court's judgment. The court held that the only actionable fraudulent misrepresentations in this matter were the misrepresentations that the bonds covered road construction in Georgia. The court applying the holding from In re Huh, found the Defendant liable because he "knew or should have known" about these misrepresentations. Id. Thus, Defendant was liable for the fraudulent misrepresentations to George Stone, Susan Stone, Marvin Ferkinhoff, Carol Ferkinhoff, Charles McAvoy, and Ellen McAvoy.

Under Tennessee agency law a debtor can be personally liable for the fraudulent misrepresentations of his agents without having knowledge if the "agent was acting in the business of his superior." White v. Revco Discount Drug Centers, Inc., 33 S.W.3d 713, 723 (Tenn. 2000)(quoting Kinnard v. Rock City Const. Co., 286 S.W.2d 352, 354 (Tenn. 1955)). Applying Tennessee agency law Defendant would be liable for any fraudulent misrepresentations of his agents when they were making sales on behalf of Sequatchie Mountain. Here, the only fraudulent misrepresentations that the sales force made were regarding the bonds for road construction covering property in Georgia. These representations were made to George Stone, Susan Stone, Marvin Ferkinhoff, Carol Ferkinhoff, Charles McAvoy, and Ellen McAvoy. Therefore, even under an application of Tennessee agency law the outcome of this trial would have been the same. Accordingly, Plaintiffs motion to alter or amend the court's judgement order is denied.

### CONCLUSION

Plaintiff's Motion to Alter or Amend Judgment is **DENIED**. An order will be entered simultaneously with this opinion.

It is so ordered.

#      #      #

**Service List**:

**Peter G. Tsarnas**
Goldman & Rosen, Ltd.
11 South Forge Street
Akron, OH 44304

8

**Jeremy M. Cothern**
Berke, Berke & Berke
420 Frazier Avenue
P.O. Box 4747
Chattanooga, TN 37405

**Anthony J DeGirolamo**
3930 Fulton Drive NW, Suite 100B
Canton, OH 44718
330-305-9700

**Scott M Zurakowski**
PO Box 36963
4775 Munson St NW
Canton, OH 44735-6963

**Stephan R. Wright**
Fleissner, Davis and Johnson
600 Georgia Avenue
Chattanooga, TN 37402